In re the MARRIAGE OF Flonnie Sue OWENS, Petitioner Wife, and James T. Owens, Respondent Husband.

James T. OWENS, Respondent-Appellant,

v.

Flonnie Sue OWENS, Petitioner-Appellee.

No. 1–1080A305.

Court of Appeals of Indiana, First District.

Sept. 1, 1981.

James R. White, P. C., New Castle, for respondent-appellant.

Michael J. Tosick, James L. Brand, Greenfield, for petitioner-appellee.

NEAL, Presiding Judge.

James T. Owens appeals the disposition of property made in the decree of dissolution entered in the Henry Circuit Court. James asserts the trial court erred in making an "unrealistic and illusory division of the marital property" inasmuch as it decreed that he and Flonnie Sue Owens remain joint owners of the majority of assets and jointly liable for all debts.

The portion of the decree disposing of the marital assets provides:[1]

"The Court further finds and orders that all real estate of the parties shall be held by them as tenants in common, and each party is ordered to execute any conveyances necessary to comply with this finding.

The Court further finds that each party hereto, shall be liable equally for any debts, including mortgages against said real estate.

The Court further finds that each party shall own an undivided ½ of all farm equipment of the parties, and that should the parties agree to retain said farm equipment, then the Respondent herein shall pay a reasonable rental to the Petitioner for the use of her one-half (½) interest therein.

The Court further finds that each party hereto shall be liable for one-half (½) of any debt now held against said farm equipment.

The Court further finds that any live stock held by either party shall be owned one-half (½) by each, and should said live stock be sold, then each party shall be entitled to one-half (½) of the net proceeds of any sale thereof. The Petitioner shall be liable for one-half (½) of any expense of maintaining said live stock, and veterinary fees connected therewith.

The Court further finds that any other debts incurred during this marriage shall be the liability of and paid equally by the parties hereto.

The Court further finds that the Petitioner shall be entitled to the following household furniture and effects of the parties: one bed, and antique dresser, one end table, one organ, two yellow chairs, all black porch furniture, one sewing machine, one night stand, one sofa and table with six chairs. All the rest of the household furniture and effects shall be the absolute property of the Respondent.

\* \* \* \* \* \*

The Court further finds that the Petitioner shall be the owner of a Chrysler Cordoba automobile, and the Respondent is ordered to transfer said automobile to her.

The Court further finds that a Ford Truck now held by the Petitioner shall be the absolute property of the Respondent, and the Petitioner is ordered to execute papers to transfer title to the truck to the Respondent. An [sic] debts against either vehicle shall be assumed, and paid solely by the party receiving the same."

James argues Ind.Code 31–1–11.5–11 (Supp.1980) requires the court to make a "real division" of the marital property. He quotes *Wilhelm v. Wilhelm*, (1979) Ind.App., 397 N.E.2d 1079, 1081, to establish his position:

"The legislature's intent was to enjoin the court, at the time of dissolution, to settle all property rights with certainty. Dissolution contemplates a final separation of the parties and a final division of their property. 'Their paths in life henceforth diverge, and, in legal contemplation, they are to each other as strangers.' *Wolfe v. Wolfe*, (1976) 46 Ohio St.2d 399, 350 N.E.2d 413, 421."

Emphasizing the extent to which Flonnie controls the operation and continued existence of the farm, James argues the court has improperly delegated the power to decide when, if ever, to divide the property. *Henderson v. Henderson*, (1980) Ind.App., 401 N.E.2d 73. He cites *Waitt v. Waitt*, (1977) 172 Ind.App. 357, 360 N.E.2d 268, for the general proposition that the division of debts is an integral part of a property division under Ind.Code 31–1–11.5–11, and

---

1. James's brief does not contain a verbatim statement of the judgment, i. e., the decree of dissolution. Ind.Rules of Procedure, Appellate Rule 8.3(A). Of course, the inclusion of a verbatim statement of the judgment is not a jurisdictional requirement, and we are not aggressive in searching for procedural error and enforcing compliance by summary affirmance. However, given Flonnie's diligence in bringing the omission to his attention in her brief, we take an extremely dim view of James's failure simply to correct the error by reply, A.R. 8.3(C), or amendment, A.R. 8.4, and thereby facilitate our review. Only our preference for deciding a case on its merits whenever possible preserves the appeal.

*Wetzel v. Wetzel*, (1967) 35 Wis.2d 103, 150 N.W.2d 482, for the general proposition that if the parties will not get along as husband and wife, it is not likely they will get along as business partners.

It is settled law that the disposition of marital assets is a matter within the sound discretion of the trial court, and reversal is proper only when the result is clearly against the logic and effect of the facts and circumstances before the court. Thus, we will not weigh the evidence, but only examine for an abuse of discretion. *In Re Marriage of Davis*, (1979) Ind.App., 395 N.E.2d 1254.

The evidence in the record indicates James and Flonnie owned and operated a family farm for fourteen years. They raised hogs and cattle, cultivated corn and hay, and milked dairy cows. James worked on the farm during the afternoon; he labored on the third shift at the local Chrysler plant. Flonnie worked on the farm during the morning and evening; she performed household chores during the day. Although there was some disagreement about who worked the most, James and Flonnie agreed each and the other worked very hard and was a valuable partner in the family operation.

James and Flonnie separated in October of 1978. James remained in possession of the farm and kept it in operation. It is not clear whether or how much livestock is on the farm at the present time. The parties own a city lot in New Castle and a thirty-seven acre "mountain-top" tract in Kentucky. They also own a considerable amount of farm equipment and machinery. The farm is mortgaged in the amount of $160,000 or more; the parties are delinquent in payments in the amount of $61,000; the parties are liable for miscellaneous debts in excess of $25,000.

Finally, the evidence in the record indicates James and Flonnie are not fond of dealing with each other on an interpersonal or business basis. Flonnie testified she could run the farm herself, but requested the trial court award her fifty percent of the value of the marital assets either by setting the property over to James and ordering a cash payoff, or by ordering the property sold and dividing the proceeds, or by awarding her a severable forty acre tract free and clear. She also stated that she would buy him out, if she could get the money, but shortly thereafter stated she had no interest in the machinery. James requested that the trial court award him the farm and all the equipment, for which he offered to pay Flonnie $20,000, one-half the current equity, over the years. He requested the trial court not order the sale of the farm for the reason that he wanted to merge his operation with his son's.

We agree with Judge Chipman's statement in *Wilhelm, supra*, regarding the General Assembly's intent to enjoin the trial court to settle all property rights with certainty. We are of the opinin the statutory provision that the court shall divide the marital property in a just and reasonable manner either by division in kind, or set over and compensation, or sale and division of proceeds, manifests the General Assembly's clear preference for a financial parting of the ways. Ind.Code 31-1-11.5-10. The General Assembly has demonstrated an awareness of the paralysis inflicted upon management and control of property or business by marital strife. If the parties desire a continuing financial relationship, they may take advantage of the statutory provision for settlement agreements which can be more or less precisely drafted in order to establish and protect their interests. We also find this preference manifest in the general rule that an order as to property disposition entered pursuant to Ind.Code 31-1-11.5-11 may not be revoked or modified in the absence of fraud, Ind. Code 31-1-11.5-17 (Supp.1980), and an order as to property division entered pursuant to Ind.Code 31-1-11.5-10 may not be modified except as the agreement itself may prescribe or the parties may subsequently consent. *Pactor v. Pactor*, (1979) Ind.App., 391 N.E.2d 1148.

We note the continuation of a business relationship or joint ownership pending the fruition of a joint venture is acceptable in

proper cases. *Cornett v. Cornett*, (1980) Ind.App., 412 N.E.2d 1232. However, we are of the opinion this order leaves too many matters undecided: "should the parties agree to retain said farm;" "should [by agreement?] said livestock be sold;" "shall pay a reasonable rental;" "shall be liable for one-half (½) of any [agreed upon?] expense." Furthermore, the order fails to direct the use of rents and profits toward the abatement of their joint liabilities.

We affirm the trial court's judgment dividing the marital assets on the basis of approximately 50 per cent each. However, we remand this case to the trial court with instructions to conduct further hearings, and receive further evidence if necessary, and thereafter divide the properties and debts in accordance with the alternative provisions of Ind.Code 31–1–11.5–11, and award to each party approximately one-half of the marital assets, in value.

Affirmed in part; remanded with instructions.

ROBERTSON, J., and BUCHANAN, C. J. (participating by designation), concur.